

590 Madison Avenue, New York, NY 10022-2524 ▪ p 212 223-4000 ▪ f 212 223-4134

August 6, 2013

**BY E-MAIL AND HAND DELIVERY**

Hon. Katherine B. Forrest
United States District Court
Southern District of New York
500 Pearl Street, Room 730
New York, New York 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 0 6 2013
```

Re:   **Century Indemnity Company v. Global Reinsurance Corporation of America
      (13-CV-0797-KBF)**

Dear Judge Forrest:

We represent Plaintiff Century Indemnity Company ("Century") in the above-referenced matter. Pursuant to Local Civil Rule 37.2. and Your Honor's Individual Practice Rule 2.F., we respectfully write to request a conference to discuss with the Court a discovery dispute with defendant Global Reinsurance Corporation of America ("Global") which could not be resolved based on a good faith meet and confer process.

**Background**

This action arises from Global's failure to pay Century $2,884,729.75 due and owing under two facultative reinsurance agreements issued by Global to Century (the "Certificates"). Under the Certificates, Global, as reinsurer, agreed to indemnify Century, as reinsured, for payments made pursuant to excess insurance policies issued by Century's predecessor, California Union, to its insured, Yarway Corporation ("Yarway").

Individuals alleging injuries resulting from exposure to products containing asbestos asserted bodily injury claims against Yarway. Yarway sought coverage for those asbestos claims from Century. Century disputed liability under the California Union excess policies, and Yarway commenced a declaratory judgment action against Century and its other insurers (the "Coverage Litigation"). In January 2006, Century provided initial notice of the Yarway asbestos claims to Global triggered by a settlement demand made by Yarway, which, for the first time, sought payment of amounts allegedly due under the California Union excess policies. For the next six years, Century kept Global informed concerning the activity in the Coverage Litigation, and, in 2012, Century and Yarway reached a settlement pursuant to which Century paid Yarway $24 million in exchange for a full release of all claims under the California Union excess policies (as well as other policies not relevant here).

On January 3, 2013, Century billed Global under the Certificates for Global's portion of the Settlement, $2,884,729.75. Global refused to pay, asserting that the Certificates contain an "initial notice requirement," and that, in violation of that notice requirement, Century failed to "promptly provide [Global] with a definitive statement of loss," a defined term which affords Global access to "those parts of [Century's] investigative claim file" for two express and specific

purposes, *to wit*, so that Global is in a position to "establish adequate loss reserves," and "determine the propensities of any loss reported hereunder."

## Discussion

At bottom, Global asserts in this action that Century's "initial notice" of the Yarway asbestos claims was somehow late (or not "prompt"), and, as a result, Global was deprived of the opportunity to "establish adequate loss reserves" and to "determine the propensities of any loss reported hereunder." Century thus requested discovery going to the heart of Global's assertions, in particular information necessary to determine *when* Global first received notice of the Yarway asbestos losses, and *whether* Global was, as it now says, actually deprived of the stated purposes of the Certificates' "definitive statement of loss" ("DSOL") provision, the opportunity to establish adequate loss reserves and the opportunity to determine the propensities of [the] loss...." Global refused to produce this critical discovery. *See* Exs. A & B hereto (Century's document requests and Global's responses and objections).

### 1.   *Global's Reserves.*

Century requested documents relating to Global's reserving for Yarway asbestos claims and the Certificates to test Global's assertion that Century's alleged failure to "promptly provide" a DSOL somehow deprived Global of the opportunity to "establish adequate loss reserves." Similarly, documents revealing when reserves were established by Global goes directly to the issue of when Global was first on notice of Yarway asbestos losses and/or the Coverage Litigation, *i.e.,* whether Century's notice was "prompt" or late. As discussed during the meet & confer and as reflected in Global's "privilege" log, Global has withheld reserve-related information based on the contention that such information is "confidential and proprietary." As we explained to Global, however, that is not a legitimate basis to withhold or redact a document, *see., e.g., Princeton Mgmt. Corp. v. Assimakopoulos*, No. 91 Civ. 5192 (JFK), 1992 WL 84552, at *1 (S.D.N.Y. April 10, 1992) ("[t]here is no absolute privilege against production of confidential business information"), and, in any event, any legitimate concern about confidential or proprietary information is adequately addressed by the Protective Order in place in this action. Nevertheless, Global refused to produce any documents relating to its Yarway-related reserves. **Accordingly, Century requests that the Court order Global to produce all documents responsive to Century Request No. 13.**

### 2.   *Global's Knowledge of Yarway Asbestos Claims/Coverage Litigation.*

Century also sought (and Global has refused to produce) documents relating to Global's knowledge of Yarway asbestos losses and/or the Coverage Litigation from sources other than Century. For example, Global may have insured Yarway directly, or reinsured other companies (like California Union) that issued insurance policies to Yarway. Stated simply, if Global was already aware of Yarway asbestos losses or the Coverage Litigation, it could hardly argue that subsequent additional notice by Century was somehow late or not "prompt." Similarly, if Global was previously advised about or on notice of Yarway asbestos losses or the Coverage Litigation, it can hardly be heard to complain that it did not have a full and adequate opportunity to "establish adequate loss reserves" and "determine the propensities" of any Yarway loss, irrespective of the information provided by Century. Indeed, a cedent may raise a claim of

2

constructive notice to overcome a reinsurer's late notice defense. *See Folksamerica Reinsurance Co. v. Republic Ins. Co.*, No. 03-Civ-0402, 2003 WL 22852737, at *13, n. 28 (S.D.N.Y. Dec. 2, 2003), *vacated on other grounds by* 182 Fed. Appx. 63 (2d Cir. 2006).[1] Again, the documents requested go to the heart of Global's putative defenses, and must be subject to careful scrutiny through discovery and cross-examination. **Accordingly, Century requests that the Court order Global to produce all documents responsive to Century Request Nos. 15 and 16.**

### 3.  *Global's Retrocessional Protection.*

Reinsurers, like Global, often purchase their own reinsurance contracts (called retrocessional agreements) to manage the liabilities in their assumed portfolios. Century requested that Global produce documents relating to any retrocession agreements covering Global's liability under the Certificates, and Global refused. The requested documents are germane for several reasons. First, retrocession agreements also generally contain notice and reporting obligations. As such, the timing and content of information provided by Global to its retrocessionaires is probative of: (a) when Global first received notice of the Yarway asbestos losses and/or the Coverage Action; (b) the establishment of reserves by Global, and, thus, whether, contrary to the assertions in this action, Global was afforded a full and fair opportunity to "establish adequate loss reserves" for Yarway-related losses; and (c) the steps taken by Global to review, oversee and monitor the Yarway asbestos losses and/or the Coverage Action, and, thus, whether, contrary to the assertions in this action, Global was afforded a full and fair opportunity to "determine the propensities of" any Yarway asbestos losses. Second, documents relating to Global's purchase and placement of its own retrocessional protections, and Global's reporting of information and developments to its retrocessionaires could reflect Global's intent and understanding of the meaning, interpretation and scope of the coverage provided by the Certificates, including the very provisions on which Global now relies in asserting its putative defenses against Century, as well as reflect Global's state of mind regarding what information was relevant and material, and what information was not. **Accordingly, Century requests that the Court order Global to produce all documents responsive to Century Request No. 5.**

---

[1] In its reply brief on the motion for judgment on the pleadings, Global asserted, wrongly, that *Unigard Sec. Ins. Co. v. North River Ins. Co.*, 4 F.3d 1049 (2d Cir. 1993), stands for the proposition that "notice provisions in reinsurance contracts require as an 'imperative[] . . . that reinsurers receive such information *from ceding insurers'* themselves." To the contrary, *Unigard*, is distinguishable. First, *Unigard* did not involve a discovery dispute, but, instead, was a decision rendered after trial. In fact, the decision suggests that the parties conducted discovery concerning Unigard's reinsurance relationships with insurers other than North River. *Id.* at 1060 ("Unigard was also contacted by other ceding insurers"; "Unigard did respond to several ceding insurers who made requests"). Second, the issue in *Unigard*, unlike here, was whether the ceding insurer could escape its notice obligations by attenuated references to other contracts, thus creating a "duty on the part of Unigard to investigate" the undisclosed circumstances and figure out the true facts on its own. Here, by contrast, Global itself argues that the DJ Complaint in the Coverage Action established *actual notice* of both the magnitude of the Yarway asbestos losses, and Yarway's allegation that all of its insurance, including the California Union excess policies, would likely be exhausted by the magnitude of the Yarway losses. Stated simply, what Global learned from other sources likely would provide the exact information Global now says it did not receive from Century, not hints that would give rise to a "duty to investigate" as was argued in *Unigard.*

3

Respectfully submitted,

Harry P. Cohen

cc: Mark G. Sheridan, Esq.

Ordered

As is the Court's practice in
most cases, this letter-memo
is likely to be resolved on
papers alone. Defendant shall
file any response per my
Individual Rules.

8/6/13          K. B. Fox
                USDJ

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENTURY INDEMNITY COMPANY, as successor-in-interest to, CALIFORNIA UNION INSURANCE COMPANY,<br><br>          Plaintiff,<br><br>      v.<br><br>GLOBAL REINSURANCE CORPORATION OF AMERICA, as successor-in-interest to, CONSTITUTION REINSURANCE CORPORATION,<br><br>          Defendant. | CIVIL ACTION<br><br>No. 1:13-cv-00797-KBF<br><br>ECF Case<br><br>**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

## CENTURY INDEMNITY COMPANY'S FIRST
## REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff Century Indemnity Company, as successor-in-interest to California Union Insurance Company ("Century"), by its attorneys, pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court, hereby requests that defendant Global Reinsurance Corporation of America, as successor-in-interest to Constitution Reinsurance Corporation ("Global Re"), produce for inspection and copying at the offices of Crowell & Moring LLP, 590 Madison Avenue, New York, New York 10022, on or before June 21, 2013, each document requested herein.

### DEFINITIONS

1.    "Global Re" means Global Reinsurance Corporation of America, as successor-in-interest to Constitution Reinsurance Corporation, and any of its present or former direct or indirect parents or subsidiaries, affiliates, affiliated persons, predecessors and successors, assigns, and all present or former directors, officers, partners, employees, representatives, agents,

attorneys, accountants, actuaries, intermediaries, brokers, advisors, consultants, or any other person or entity acting on its behalf.

2. "Yarway" means Yarway Corporation and any of its present or former direct or indirect parents or subsidiaries, affiliates, affiliated persons, predecessors and successors, assigns, and all present or former directors, officers, partners, employees, representatives, agents, attorneys, accountants, actuaries, intermediaries, brokers, advisors, consultants, or any other person or entity acting on its behalf.

3. "Yarway Asbestos Claim" means any claim asserted against Yarway alleging injury as a result of exposure to asbestos.

4. The "1978 Umbrella Policy" means excess insurance policy number ZCX003276 issued to Yarway Corporation ("Yarway").

5. The "1979 Umbrella Policy" means excess insurance policy number ZCX004261 issued to Yarway.

6. The "Umbrella Policies" means the 1978 Umbrella Policy and the 1979 Umbrella Policy.

7. The "1978 Reinsurance Certificate" means Certificate of Reinsurance number 65973 issued by Global Re.

8. The "1980 Reinsurance Certificate" means Certificate of Reinsurance number 68640 issued by Global Re.

9. The "Reinsurance Certificates" means the 1978 Reinsurance Certificate and the 1980 Reinsurance Certificate.

2

10.     The "Yarway Coverage Litigation" means the lawsuit captioned Yarway Corporation, *et al.* v. Admiral Insurance Company, *et. al.*, Case No. 04-535399, Superior Court of the State of California, For the City and County of San Francisco.

11.     The "Yarway Reinsurance Claims" means any notices, updates, billing, proofs of loss, and requests for payment submitted to Global Re under or in connection with the Reinsurance Certificates.

12.     The "First Amended Counterclaim" means Global Re's April 25, 2013 First Amended Counterclaim for Declaratory Judgment in this action.

13.     "Document" shall have the same meaning as that prescribed by the Federal Rules of Civil Procedure.

14.     "Communication" means any contact or transmittal of information, whether oral, written, electronic or otherwise, direct or indirect, between two or more persons or entities, including, without limitation, conversations, meetings, telephone calls, conferences, letters, notes, emails, text messages, or correspondence.

15.     "Concerning" means, without limitation, about, relating to, referring to, regarding, describing, evidencing, constituting, concerning, containing, embodying, comprising, reflecting, identifying, stating, setting forth, arising out of, summarizing, noting, showing, supporting, rebutting, mentioning, studying, dealing with, commenting on, responding to, discussing, depicting, analyzing, interpreting, or evaluating.

## INSTRUCTIONS

1.     Each request shall be answered completely, separately and fully.  If any request cannot be complied with in full, it shall be complied with to the extent possible and Global Re shall explain why full compliance is not possible.

3

2.    Each request seeks production of all documents described, including, without limitation, all drafts and non-identical copies.

3.    Each request requires production of the document in its entirety without abbreviation or expurgation, and any attachment(s) thereto, and any file, folder, or jacket, and any labels thereon, in which such document is stored, filed or maintained.

4.    Each request requires production of all documents in the possession, custody or control of Global Re or that Global Re has the legal right to obtain, or has the ability to obtain from sources under its control.

5.    Each request requires production of documents contained in Global Re's files however organized or maintained, including without limitation local, network, server, mainframe, and/or personal computers, desk files, personal files, subject matter files, working files, and e-mail files.

6.    Each request seeks production of the documents requested as they are kept in the usual, normal or ordinary course of business.

7.    Documents that are maintained electronically should be produced electronically with all available meta-data in the manner in which the documents are maintained, including organization by folder and/or database in which the documents are maintained, with both the documents and the folder and/or database identified by name.

8.    The words "and" and "or" shall be construed either conjunctively or disjunctively, or shall be construed together as "and/or" as necessary to make the request inclusive rather than exclusive, and to bring within the scope of the requests all responses that might otherwise be construed to be outside its scope.

9.    The words "all" and "each" shall be construed as all and each.

4

10.    The word "including" shall be construed to mean including without limitation.

11.    The use of the singular form of any word includes the plural, and vice versa, so as to make the request inclusive rather than exclusive.

12.    The use of the past tense shall include the present tense, and vice versa, so as to make the request inclusive rather than exclusive.

13.    If Global Re objects to any request or part thereof or otherwise refuses to produce any documents responsive to any request, the specific reason and basis for any such objection or refusal must be stated in detail and with particularity.

14.    If it is claimed that the attorney-client privilege, work-product protection, confidentiality or any other privilege or protection applies to any document or portion of a document sought by a request, stamp or label the portion of any document that is redacted, and provide a list or log setting forth the following information for each individual document withheld or redacted: (a) the Bates or other production number (if any); (b) the type of document; (c) the date, nature and subject matter of the document; (d) the title and "re" or reference line of the document; (e) the name(s) and job title(s) of (i) the author(s) of the document, (ii) all persons to or by whom such document was directed or addressed (including carbon copies or blind copies, if any), and (iii) all persons who received or were shown the document; and (f) the nature of the privilege, protection or other ground or basis relied on for withholding the document or portion of the document.

15.    If there are no documents responsive to any request, state so in writing.

16.    These requests are deemed to be continuing, and if further documents come to the attention of Global Re that are called for by these requests, such documents must be produced immediately.

5

## DOCUMENT REQUESTS

**Document Request No. 1:**      A complete copy of each of the Reinsurance Certificates, including all Documents and Communications that reflect or form any part of the Reinsurance Certificates, such as slips, cover notes, binders, wordings, endorsements, declarations pages, addenda, and amendments

**Document Request No. 2:**      All Documents and Communications concerning the Reinsurance Certificates.

**Document Request No. 3:**      All Documents and Communications concerning the underwriting, issuance, binding, solicitation, placement, drafting, formation, negotiation, execution and administration, or decision to issue or enter into, the Reinsurance Certificates, including, without limitation, all placement, underwriting, contract, claim, correspondence, premium, accounting, audit, and other files relating to the Reinsurance Certificates.

**Document Request No. 4:**      All Documents and Communications concerning the interpretation, construction, meaning, effect, implementation or derivation of the terms and provisions in each of the Reinsurance Certificates, including, without limitation, Articles D and E of the Reinsurance Certificates' Reinsuring Agreements and Conditions and the defined term "Definitive Statement of Loss."

**Document Request No. 5:**      All Documents and Communications concerning any reinsurance or retrocession agreements, protections or coverages sought or placed by Global Re which cover, potentially cover, or arguably cover any portion of Global Re's liability or potential liability under or in connection with the Reinsurance Certificates.

**Document Request No. 6:**      All Documents and Communications concerning the actual, projected or potential liability of Global Re under the Reinsurance Certificates, including,

without limitation, reports or notices of loss, or any analysis, review, evaluation or study of Global Re's actual, projected or potential financial exposure under or in connection with the Reinsurance Certificates.

**Document Request No. 7:** All Documents and Communications concerning the Yarway Reinsurance Claims, including, without limitation, all claim files, reinsurance claim files, assumed claim files, claims logs, claim notes and any other files (howsoever designated, named or identified by Global Re) which contain Documents and Communications concerning the Yarway Asbestos Claims, the Umbrella Policies, the Reinsurance Certificates, the Yarway Coverage Litigation and/or the Yarway Reinsurance Claim.

**Document Request No. 8:** All Documents and Communications concerning the notices provided to or received by Global Re under or in connection with the Reinsurance Certificates, including, without limitation, any review, evaluation, or analysis of whether each instance of notice was proper, timely and/or in compliance with the provisions and requirements of the Reinsurance Certificates.

**Document Request No. 9:** All Documents and Communications concerning Global Re's decision not to object to, or issue a reservation of rights in response to, Century's January 6, 2006 letter concerning the Yarway Coverage Litigation.

**Document Request No. 10:** All Documents and Communications concerning any prejudice, harm, or injury allegedly suffered by Global Re as a result of Century's alleged failure to comply with the notice provisions contained in the Reinsurance Certificates.

**Document Request No. 11:** All Documents and Communications concerning Global Re's review, evaluation, analysis and consideration whether to pay, not pay or reserve rights in connection with the Yarway Reinsurance Claim.

7

**Document Request No. 12:**    All Documents and Communications concerning any audit, inspection, and/or review conducted by or on behalf of Global Re concerning the Yarway Asbestos Claims, the Umbrella Policies, the Reinsurance Certificates, the Yarway Coverage Litigation and/or the Yarway Reinsurance Claim, including, without limitation, Global Re's October 2012 audit of Century's files.

**Document Request No. 13:**    All Documents and Communications concerning the establishment, setting, posting, evaluation, revising, adjusting or supplementing of any reserves concerning or in connection with Global Re's actual, projected or potential financial exposure under or in connection with the Reinsurance Certificates.

**Document Request No. 14:**    All Documents and Communications concerning any insurance policy issued by Global Re to Yarway which covers, potentially covers, or arguably covers Yarway Asbestos Claims.

**Document Request No. 15:**    All Documents and Communications concerning any treaty or facultative reinsurance or retrocession agreement, protection or coverage issued or entered into by Global Re reinsuring any ceding company other than Century which covers, potentially covers, or arguably covers Yarway Asbestos Claims.

**Document Request No. 16:**    All Documents and Communications concerning Global Re's knowledge or awareness from any source of Yarway Asbestos Claims or the Yarway Coverage Litigation.

**Document Request No. 17:**    All Documents and Communications concerning each of Global Re's affirmative defenses.

**Document Request No. 18:**    All Documents and Communications concerning Global Re's allegation (at paragraph 20 of its First Amended Counterclaim) that "Century breached the

8

condition precedent contained in the 1978 and 1980 Facultative Certificates by failing to provide GLOBAL with a timely definitive statement of loss, as required by Provision D of the Certificates."

**Document Request No. 19:**     All Documents and Communications concerning each reason why (at paragraph 25 of its First Amended Counterclaim) "GLOBAL disputes that it owes the amounts billed, and to be billed, by Century per the terms, conditions and definitions of the 1978 and 1980 Facultative Certificates."

**Document Request No. 20:**     All Documents and Communications concerning Global Re's allegation (at paragraph 26(a) of its First Amended Counterclaim) that "Century's billings do not satisfy or are in violation of the terms, conditions, and/or definitions of the 1978 and 1980 Facultative Certificates."

**Document Request No. 21:**     All Documents and Communications concerning Global Re's allegation (at paragraph 26(b) of its First Amended Counterclaim) that "Century breached its duty of utmost good faith and fair dealing owed to GLOBAL."

**Document Request No. 22:**     All Documents and Communications concerning Global Re's allegation (at paragraph 26(c) of its First Amended Counterclaim) that "the settlement of the Yarway DJ Complaint, the settlement of the underlying asbestos claims, or the allocation of the loss were not reasonable."

**Document Request No. 23:**     All Documents and Communications provided to, considered or reviewed by any expert retained by or on behalf of Global Re to consult or testify in connection with this litigation.

**Document Request No. 24:**     All Documents and Communications upon which Global Re intends to rely upon in connection with this litigation.

9

**Document Request No. 25:**      All Documents and Communications considered, reviewed, provided to or otherwise shown to any individual who Global Re will call, or has considered calling, as a witness in connection with this litigation.

Dated: May 10, 2013

**CROWELL & MORING LLP**

Harry P. Cohen
Michael K. Robles
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 803-4044

Attorneys for Plaintiff
Century Indemnity Company

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENTURY INDEMNITY COMPANY,  ) | |
| as successor-in-interest to, CALIFORNIA  ) | |
| UNION INSURANCE COMPANY,  ) | |
|  ) | |
|     Plaintiff/Counterclaim Defendant,  ) | CIVIL ACTION |
|  ) | |
|         v.  ) | No. 1:13-cv-00797-KBF |
|  ) |       ECF Case |
| GLOBAL REINSURANCE  ) | |
| CORPORATION OF AMERICA, as  ) | |
| successor-in-interest to,  ) | |
| CONSTITUTION REINSURANCE  ) | |
| CORPORATION,  ) | |
|  ) | |
|     Defendant/Counterclaim Plaintiff.  ) | |

**GLOBAL REINSURANCE CORPORATION OF AMERICA'S RESPONSES TO**
**CENTURY INDEMNITY COMPANY'S**
**FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant/Counterclaim Plaintiff GLOBAL Reinsurance Corporation of America,

formerly known as Constitution Reinsurance Corporation, ("GLOBAL"), responds to

Plaintiff/Counterclaim Defendant Century Indemnity Company's ("Century") First Request for

Production of Documents, as follows:

**RESERVATIONS**

GLOBAL's objections and responses are set forth herein without prejudice to its rights to

assert additional objections or supplemental responses should GLOBAL discover additional

information or grounds for objections. GLOBAL further reserves its right to supplement or

amend these responses at any time prior to trial.

Nothing herein shall be construed as an admission by GLOBAL of the admissibility or

relevance of any information contained in GLOBAL's response to Century's Document

Requests.

## GENERAL OBJECTIONS

**1.**     **Relevance.**  GLOBAL objects to each of Century's Document Requests to the extent that they seek information or documents that are not relevant to the subject matter or the issues involved in this action, or seek information or documents not reasonably calculated to lead to the discovery of admissible evidence.  This objection includes documents or information that GLOBAL may have received from or related to entities other than Century.

**2.**     **Vague, overly broad and unduly burdensome.**  GLOBAL objects to each of Century's Document Requests to the extent that they are vague, unclear, overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence. Further, such requests seek various documents equally available to Century through sources other than discovery.

**3.**     **Privileged and/or Confidential.**  GLOBAL objects to each of Century's Document Requests to the extent that they seek information or documents protected by the attorney/client privilege or the work product doctrine.  Further, GLOBAL objects to each of Century's Document Requests to the extent that they request the disclosure of confidential or sensitive business information and GLOBAL asserts every applicable privilege and rule governing confidentiality to the fullest extent provided by law.

**4.**     **Contention requests.**  GLOBAL objects to the use of Century's contention requests because they are in improper form and premature.  Discovery is ongoing and GLOBAL is not yet aware of all relevant facts.  GLOBAL further objects to the contention requests to the extent the law governing this discovery relieves GLOBAL from having to respond to said requests. Further, said requests are vague, ambiguous and unduly burdensome.

**5.**     **Century's knowledge.**  GLOBAL objects to Century's Document Requests as burdensome to the extent they seek documents or information already in Century's knowledge,

2

possession and/or control, or documents or information equally available or accessible to

Century.

     **6.**    **Trial preparation information.**  GLOBAL objects to each of Century's

Document Requests to the extent that they seek disclosure of information prepared in

anticipation of litigation or trial preparation material which are not subject to discovery.

     **7.**    **Beyond the applicable rules of discovery.**  GLOBAL objects to Century's

Definitions, Instructions and Document Requests to the extent that they seek to extend the

obligations of GLOBAL beyond the obligations imposed by the Federal Rules of Civil

Procedure, applicable law, or orders of this Court.

### SPECIFIC OBJECTIONS AND RESPONSES TO CENTURY'S REQUESTS FOR PRODUCTION

     **Document Request No. 1:**    A complete copy of each of the Reinsurance Certificates, including all Documents and Communications that reflect or form any part of the Reinsurance Certificates, such as slips, cover notes, binders, wordings, endorsements, declarations pages, addenda, and amendments.

     **RESPONSE:**

     GLOBAL objects to this Request for the reasons stated in its General Objection 5.

Subject to and without waiving said objection, GLOBAL states that it will produce all relevant,

non-privileged documents that it has located responsive to this request.

     **Document Request No. 2:**    All Documents and Communications concerning the Reinsurance Certificates.

     **RESPONSE:**

     GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 3,

5, 6 and 7. Subject to and without waiving said objections, GLOBAL states that it will produce

all relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 3:**   All Documents and Communications concerning the underwriting, issuance, binding, solicitation, placement, drafting, formation, negotiation, execution and administration, or decision to issue or enter into, the Reinsurance Certificates, including, without limitation, all placement, underwriting, contract, claim, correspondence, premium, accounting, audit and other files relating to the Reinsurance Certificates.

### RESPONSE:

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 3,

5 and 7.  Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 4:**   All Documents and Communications concerning the interpretation, construction, meaning, effect, implementation or derivation of the terms and provisions in each of the Reinsurance Certificates, including, without limitation, Articles D and E of the Reinsurance Certificates' Reinsuring Agreements and Conditions and the defined term "Definitive Statement of Loss".

### RESPONSE:

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 3,

and 7.  Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 5:**   All Documents and Communications concerning any reinsurance or retrocession agreements, protections or coverages sought or placed by Global Re which cover, potentially cover, or arguably cover any portion of Global Re's liability or potential liability under or in connection with the Reinsurance Certificates.

### RESPONSE:

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 3

and 7.

**Document Request No. 6:** All documents and communications concerning the actual, projected or potential liability of Global Re under the Reinsurance Certificates, including, without limitation, reports or notices of loss, or any analysis, review, evaluation or study of Global Re's actual, projected or potential financial exposure under or in connection with the Reinsurance Certificates.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 3,

6 and 7. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request pertaining to the

Yarway claims at issue in this litigation.

**Document Request No. 7:** All Documents and Communications concerning the Yarway Reinsurance Claims, including, without limitation, all claim files, reinsurance claim files, assumed claim files, claims logs, claim notes and any other files (howsoever designated, named or identified by Global Re) which contain Documents and Communications concerning the Yarway Asbestos Claims, the Umbrella Policies, the Reinsurance Certificates, the Yarway Coverage Litigation and/or the Yarway Reinsurance Claim.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2 and

3. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 8:** All Documents and Communications concerning the notices provided to or received by Global Re under or in connection with the Reinsurance Certificates, including, without limitation, any review, evaluation, or analysis of whether each instance of notice was proper, timely and/or in compliance with the provisions and requirements of the Reinsurance Certificates.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 3,

6 and 7. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request pertaining to

notices provided to GLOBAL from Century regarding the Yarway claims at issue in this

litigation.

**Document Request No. 9:**   All Documents and Communications concerning Global
Re's decision not to object to, or issue a reservation of rights in response to, Century's January 6,
2006 letter concerning the Yarway Coverage Litigation.

### RESPONSE:

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 3, 5

and 7. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 10:**   All Documents and Communications concerning any
prejudice, harm, or injury allegedly suffered by Global Re as a result of Century's alleged failure
to comply with the notice provisions contained in the Reinsurance Certificates.

### RESPONSE:

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 3 and

7. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 11:**   All Documents and Communications concerning Global
Re's review, evaluation, analysis and consideration whether to pay, not pay or reserve rights in
connection with the Yarway Reinsurance Claim.

### RESPONSE:

GLOBAL objects to this Request for the reasons stated in its General Objections 3 and 5.

Subject to and without waiving said objections, GLOBAL states that it will produce all relevant,

non-privileged documents that it has located responsive to this request.

**Document Request No. 12:** All Documents and Communications concerning any audit, inspection, and/or review conducted by or on behalf of Global Re concerning the Yarway Asbestos Claims, the Umbrella Policies, the Reinsurance Certificates, the Yarway Coverage Litigation and/or the Yarway Reinsurance Claim, including, without limitation, Global Re's October 2012 audit of Century's files.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 3

and 5. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 13:** All Documents and Communications concerning the establishment, setting, posting, evaluation, revising, adjusting or supplementing of any reserves concerning or in connection with Global Re's actual, projected or potential financial exposure under or in connection with the Reinsurance Certificates.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 3

and 7.

**Document Request No. 14:** All Documents and Communications concerning any insurance policy issued by Global Re to Yarway which covers, potentially covers, or arguably covers Yarway Asbestos Claims.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 1 and 3.

Subject to and without waiving said objections, GLOBAL states that it does not possess any

documents responsive to this Request.

**Document Request No. 15:** All Documents and Communications concerning any treaty or facultative reinsurance or retrocession agreement, protection or coverage issued or entered

into by Global Re reinsuring any ceding company other than Century which covers, potentially covers, or arguably covers Yarway Asbestos Claims.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 3

and 7.

**Document Request No. 16:** All Documents and Communications concerning Global Re's knowledge or awareness from any source of Yarway Asbestos Claims or the Yarway Coverage Litigation.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 1, 2, 5

and 7. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request pertaining to

notice or information provided by Century.

**Document Request No. 17:** All Documents and Communications concerning each of Global Re's affirmative defenses.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 2 and 3.

Subject to and without waiving said objections, GLOBAL states that it will produce all relevant,

non-privileged documents that it has located responsive to this request.

**Document Request No. 18:** All Documents and Communications concerning Global Re's allegation (at paragraph 20 of its First Amended Counterclaim) that "Century breached the condition precedent contained in the 1978 and 1980 Facultative Certificates by failing to provide GLOBAL with a timely definitive statement of loss, as required by Provision D of the Certificates."

8

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 3 and 5.

Subject to and without waiving said objections, GLOBAL states that it will produce all relevant,

non-privileged documents that it has located responsive to this request.

**Document Request No. 19:**  All Documents and Communications concerning each
reason why (at paragraph 25 of its First Amended Counterclaim) "GLOBAL disputes that it
owes the amounts billed, and to be billed, by Century per the terms, conditions and definitions of
the 1978 and 1980 Facultative Certificates."

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 2, 3, 4

and 5. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 20:**  All Documents and Communications concerning Global
Re's allegation (at paragraph 26(a) of its First Amended Counterclaim) that "Century's billings
do not satisfy or are in violation of the terms, conditions, and/or definitions of the 1978 and 1980
Facultative Certificates."

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 2, 3, 4

and 5. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 21:**  All Documents and Communications concerning Global
Re's allegation (at paragraph 26(b) of its First Amended Counterclaim) that "Century breached
its duty of utmost good faith and fair dealing owed to GLOBAL."

9

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 2, 3, 4

and 5. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 22:** All Documents and Communications concerning Global
Re's allegation (at paragraph 26(b) of its First Amended Counterclaim) that "the settlement of
the Yarway DJ Complaint, the settlement of the underlying asbestos claims, or the allocation of
the loss were not reasonable."

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 2, 3 and

4. Subject to and without waiving said objections, GLOBAL states that it will produce all

relevant, non-privileged documents that it has located responsive to this request.

**Document Request No. 23:** All Documents and Communications provided to,
considered or reviewed by any expert retained by or on behalf of Global Re to consult or testify
in connection with this litigation.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 2, 3, 6

and 7. Subject to and without waiving said objections, GLOBAL further objects to this Request

because it is premature at this time. Subject to and without waiving said objections, GLOBAL

will supplement this response and its objections at an appropriate time, if necessary.

**Document Request No. 24:** All Documents and Communications upon which Global
Re intends to rely upon in connection with this litigation.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 2, 3, 6

and 7. Subject to and without waiving said objections, GLOBAL further objects to this Request

because it is premature at this time. Subject to and without waiving said objections, GLOBAL

will produce the documents described in its responses herein and will supplement its production

at an appropriate time, if necessary.

**Document Request No. 25:**  All Documents and Communications considered, reviewed,
provided to or otherwise shown to any individual who Global Re will call, or has considered
calling, as a witness in connection with this litigation.

**RESPONSE:**

GLOBAL objects to this Request for the reasons stated in its General Objections 2, 3, 6

and 7. Subject to and without waiving said objections, GLOBAL further objects to this Request

because it is premature at this time. Subject to and without waiving said objections, GLOBAL

will supplement this response and its objections at an appropriate time, if necessary.


Respectfully submitted,

BATES CAREY NICOLAIDES LLP

By: *Bonny S. Garcha*
          Mark G. Sheridan
          Bonny S. Garcha
          BATES CAREY NICOLAIDES LLP
          191 North Wacker
          Suite 2400
          Chicago, IL 60606
          312-762-3100 (Telephone)
          312-762-3200 (Facsimile)
          *msheridan@bcnlaw.com*
          *bgarcha@bcnlaw.com*

11

David L. Pitchford (DP8163)
Daniel S. Brower (DB4981)
PITCHFORD LAW GROUP LLC
1700 Broadway, 41st Floor
New York, New York 10019
*dpitchford@pitchfordllc.com*
*dbrower@pitchfordllc.com*

Attorneys for Defendant/Counterclaim Plaintiff,
GLOBAL Reinsurance Corporation Of America

Dated:   May 20, 2013

12

## CERTIFICATE OF SERVICE

This is to certify that on May 20, 2013, a copy of the foregoing responses to Century

Indemnity Company's First Request for Production of Documents to Defendant/Counterclaim

Plaintiff, GLOBAL Reinsurance Corporation of America, formerly known as Constitution

Reinsurance Corporation, was served via federal express to the following parties in this action:

> Harry P. Cohen, Esq.
> Michael K. Robles, Esq.
> Crowell & Moring LLP
> 590 Madison Avenue
> New York, NY 10022
> *hcohen@crowell.com*
> *mrobles@crowell.com*

Bonny S. Garcha

940431

13